Cook *v.* Cook.

---

GRACE V. COOK

*v.*

WALTER I. COOK.

32  475
62  26

1. Where a husband, who had the same venereal disease twice before his marriage; and shortly after his marriage consorted with at least one lewd woman; and his physical condition was such as to render it extremely probable that he was again infected, had intercourse with his wife, and thereby communicated the venereal disease to her,—

Cook v. Cook.

*Held*, that he was guilty of extreme cruelty, and a divorce was decreed therefor.

2. Evidence of the defendant's association with abandoned women, after his marriage, and before he communicated the disease to his wife, is relevant, because it shows that he had, as she must have known, exposed himself to liability to contract venereal disease, and, therefore, being diseased (though professing not to have known that his malady was the venereal disease), that he was reckless in having intercourse with his wife, with knowledge of his condition, shortly afterwards.

Bill for divorce *a mensa et thoro*. On final hearing on pleadings and proofs.

*Mr. Isaac R. Wilson*, for complainant.

*Mr. J. Buchanan* and *Mr. E. T. Green*, for defendant.

The Chancellor.

The parties to this suit were married August 11th, 1878. They were both residents of this state at the time, and have been ever since. About the 23d of September, following the date of the marriage, the complainant found herself seriously diseased with a complaint which proved to be syphilis. She had contracted it from the defendant in the course of their connubial relations. The physician whom she first called (she called him on the 23d) appears not to have discovered the character of her disease (or, if he discovered it, did not inform her of it), but told her it was a severe cold. Two days afterwards, she called another, Dr. Phillips, who sub-

Note.—Contracting a venereal disease is sufficient cruelty on the husband's part to justify a divorce (*Canfield* v. *Canfield*, *34 Mich. 519*; *West. Jur. Sept. 1874*; *1 Cent. L. J. 579*; see *Mount* v. *Mount*, *2 McCart. 162*; *Jones* v. *Jones*, *3 C. E. Gr. 33*); and its communication to his wife (*N.* v. *N.*, *3 Sw. & Trist. 234*. See *Long* v. *Long*, *2 Hawks 189*); or afterwards attempting to force his wife to his bed (*Popkin* v. *Popkin*, *1 Hagg. 733*, note); but the fact that the wife was infected, and that she had not been unchaste before marriage or unfaithful afterwards, there being no proof that the husband had ever suffered from the disease, is not sufficient (*Morphett* v. *Morphett*, *L. R. (1 P. & D.) 702*. See *Collett* v. *Collett*, *1 Curteis 686*.

Cook v. Cook.

sequently made a careful examination, and ascertained the true nature of the malady. He did not, however, become positively convinced of it until the 12th or 13th of October.

The parties were living at the American House, in Trenton. About the 27th of September the defendant left the room which, up to that time had been occupied by them, and went to another, to accommodate a young lady friend of the complainant, who came to nurse her in her illness. On the 29th of September that lady was temporarily absent, and her place as nurse was taken by another woman. On that night the defendant returned to his wife's room, and, expelling the nurse therefrom, occupied the same bed with his wife for the night. That appears to have been the last of their connubial intercourse.

The complainant, although not suspecting what was the character of the disease with which she was suffering, believed that she had contracted it, whatever it was, from her husband. She told the physician whom she first called, that she thought she had some disease which her husband had communicated to her, as her clothing bore the same indications as his, and he was taking medicines, and using an instrument, which she described and showed to the physician. After ascertaining the nature of her complaint, she refused longer to live with her husband, and, subsequently, filed her bill for a divorce from bed and board, for extreme cruelty. The fact that her disease is syphilis, and that she contracted it from her husband, is not denied.

As to fraudulent concealment of disease by the wife, see *Meyer* v. *Meyer*, *49 How. Pr. 311*.

To openly consort with lewd women is cruelty (*McClung* v. *McClung, 40 Mich. 493*); or living in adultery with a servant (*Cartwright* v. *Cartwright, 18 Tex. 643*; *Gholston* v. *Gholston, 31 Ga. 625*; *Clapp* v. *Clapp, 97 Mass. 531*; *Thompson* v. *Thompson, 10 Rich. Eq. 416*. See *Miller* v. *Miller, 78 N. C. 102*; *Little* v. *Little, 63 N. C. 22*; *Hair* v. *Hair, 10 Rich. Eq. 163*); or an attempt to debauch a servant (*Popkin* v. *Popkin, 1 Hagg. 733, note* (a). See *Anthony* v. *Anthony, 1 Sw. & Trist. 594*); or a stepdaughter (*Barber* v. *Barber, 7 West. L. J. 277*); or a false charge of an incestuous connection (*Bray* v. *Bray, 1 Hagg. 163*. See *Thomas* v. *Thomas, 2 Coldw. 123*); or a husband publicly treating his wife as a prostitute (*Milner* v. *Milner, 4 Sw. & Trist. 240*).—REP.

The defendant alleges, however, that he was unaware that he was affected with the disease.   It is quite clear from the evidence that, at the time when he communicated the disorder to his wife, he was so seriously affected with a venereal disease, that he had consulted his physician on the subject, and was taking appropriate medicines and applying the necessary remedies.   His wife discovered appearances of disease (sores) on his back, while he was in the act of changing his clothing on retiring to bed with her about ten days before she was affected with her illness.   She questioned him in regard to them, and he answered that he had the hives.   Knowing no better, she was satisfied with the explanation.   He testifies that his physician, before mentioned, did not tell him what his disease was, but told him that he had the hives, and he adds that they showed themselves on his wrists.   The physician, however, who was sworn as a witness in the cause, does not corroborate him, but, on the other hand, says he supposed the defendant was suffering from secondary syphilis, and prescribed for him accordingly.

The defendant admits, and it appears otherwise by the evidence, that he was at the same time affected in his genital organs with a complaint, a discharge which he says he supposed was caused by weakness there, arising from injuries by accidents, which he states had occurred a long time before; and it is proved that he was making use of medicines and other remedies for a private disease, and was endeavoring to conceal the fact that he had such disorder.   It cannot be doubted that he knew, on the occasion on which his wife contracted the disease from him, that he had syphilis.   He was no stranger to the disorder, for he admits that he had had it twice, once in 1874 and again in 1875.   Taking into consideration the fact that he had had the venereal disease twice; that he had associated with at least one lewd woman a very short time after his marriage, and that his physical condition was such as to render it extremely probable that he was again infected, it

Cook *v.* Cook.

was his duty to abstain from connubial intercourse with his wife, at least until after he had been assured by competent medical authority that her health would not be endangered thereby.

If a husband, knowing that he is in such a state of health that, by having connection with his wife, he will run the risk of communicating venereal disease to her, recklessly has connection with her and thereby communicates the disease to her, he is guilty of cruelty, and the presumption is that he knew his own state of health and the probable result of the connection. *Boardman* v. *Boardman, L. R. (1 P. & D.) 233; Brown* v. *Brown, Id. 46; Bish. on Marr. & Div.* § 735; *C——* v. *C——, 28 E. L. & E. 603.*

The proof of the willfulness of the act may reasonably be sought in surrounding circumstances, in the condition of the husband and the probabilities of the case after such explanations as he may offer. *Brown* v. *Brown, ubi supra.*

"I hardly think it necessary," says Dr. Lushington, in *Ciocci* v. *Ciocci, 26 E. L. & E. 604, 611,* "to inquire whether there is evidence of his (the husband's) having been warned of the danger, if he married in the state in which he is clearly proved to have been, for I am of opinion that common sense, ordinary experience—I speak not of higher motives—must have suggested to him the probable consequences, the consequences likely to result in the ordinary course of things, from marriage under the circumstances proved to have existed; and if this were a point necessary to be determined, I should hold, and without doubt, that if a man married under such circumstances (having had venereal disease for some time immediately prior to the marriage, and, though in a convalescent condition, not entirely cured) and communicated to his wife the venereal disease, it was, to use the mildest term applicable to such conduct, such utter recklessness of the health and comfort of his wife, that if he did communicate such disease, he was guilty of cruelty in the eye of the law, and I should hold this upon the principle that whoever does an act likely to produce injury, and

the injury follows, can never excuse himself by saying that he hoped a probable consequence might, by some peculiar good fortune, not follow."

In the case in hand, the parties were married, as before stated, on the 11th of August. Within about a month afterwards, the defendant's condition of body was such as to attract the attention of his wife to the venereal sores upon it. He, according to his own statement, was affected with an active disease of his genital organs, which he attributed to an infirmity arising from past injury of the parts. He was consulting his physician for his disorder, whatever it was. It does not appear but that he was affected by the venereal disease when he was married. His physician says he cannot speak positively on the subject, but his impression is that he treated him for secondary syphilis in its latter stage. The sores on his back indicated the presence of the disorder in an active state. The physician was the same who had treated him in 1874 and 1875 for syphilis. He appears to have made no examination of the defendant when the latter came to him in 1878.

Nor has the defendant established, by the medical testimony he has adduced, the proposition that one who has been cured of syphilis is ever afterwards proof against it. On the other hand, the proof is to the contrary. Indeed, the defendant himself swears that he had that disease twice, and he says that, to all appearances, he was cured both times.

There is further and conclusive evidence of willfulness in the language addressed by the defendant to the complainant, after she had been infected, as she knew, from contact with him, and before she had become aware of the nature of her complaint. She swears that he told her on Saturday evening, October 12th, speaking of one Kitty Ingleton, who was supposed to be dying (and with whom, before his marriage, the defendant appears to have consorted), that he wished he had never left that woman ; and when the complainant replied that she wished he had not, because, if he had not, she (the complainant) would not then be pros-

trated with that disease, he rejoined that it did not make any difference, for he would grant her a divorce if she wanted one, and added that he had given her something she could not soon get rid of.

The complainant's physician (Dr. Phillips) testifies that while he was attending her, and before he had informed her that she was affected with venereal disease, the defendant charged him with having told her that she had venereal disease, and that the defendant had communicated it to her. This Dr. Phillips denied, for he had not then informed her what the nature of her malady was. It appears from that conversation that the defendant knew the nature of the complainant's disorder before she had been informed of it.

The defendant's counsel insists that. the testimony in reference to the defendant's association, after his marriage, with women of abandoned character, is irrelevant. But the objection is not well taken; the evidence is competent to show that the defendant, after his marriage, and just before he infected his wife, exposed himself to the liability to contract venereal disease, and therefore was, under the circumstances, reckless in having connection with her, with the knowledge which, he admits, he had of his condition.

There will be a decree of divorce from bed and board, with alimony and counsel fees.